I guess I should have just stayed up here, Your Honor. All right. Are these the cases that are sort of flip sides of each other? No, Your Honor. This actually, the B, may it please the Court, for the record, Philip Stillman on behalf of Mr. Blixseth. This is what I call the B shareholder appeal, and it's the, Mr. Blixseth. I'm sorry, this is... It's the 60B case. It's a 60... I like to call it the 502 case, actually, Your Honor. But the... And I think the distinction between the 502 and 60B is significant because I think the Court need look no further in this case than the fact that the B shareholders, if I may just in summary call them that, are seeking in an adversary proceeding, AP 18, they were seeking a percentage of the $209 million... I'm sorry, so you're arguing Glasser separately from... Yes, Your Honor, this... I'm sorry, there's Blixseth v. Glasser and Glasser v. Blixseth. You're going to argue these separately? Actually, Your Honor, this would be number two on the calendar, which is Blixseth v. Glasser, and it's unrelated, it's an unrelated issue to the next, to item three and four on the calendar, which is the injunction appeal and... I see. Those two are the ones about... Those are tied together. Okay. Right. So in the B shareholder case, it's the same $209 million that everyone's been suing Mr. Blixseth about with the promissory notes. This time... If you just paid it, it would be all over. Wouldn't it be that simple? But in this case, Your Honor, the B shareholders are seeking a percentage of that. First of all, they claim that it's a loan, a distribution, not a loan. Then they say it's a distribution, and therefore we were entitled to 7.5 percent of it. The problem with that is that the bankruptcy court found that that was not only a distribution, not notes, the notes were shams, but that it was a fraudulent transfer. And so 502D leaves no discretion with the bankruptcy court. The bankruptcy court shall disallow a claim that... Can I back up a minute? I thought there was a fundamental disagreement about whether that's what this lawsuit was actually about. Not that I'm aware of. What? No, am I wrong about that? I thought that the claim was that this B shareholder claim was about other things, not about the distribution. No, Your Honor. The distribution is the foundation of the problem here. Because by seeking a fraudulent... Basically, it's simple as this. They're seeking a percentage of a fraudulent transfer. And as the court knows, 502D absolutely prohibits that. And so at the time, the bankruptcy court has no discretion. But even the liquidating trust admitted that if the court ruled in favor of the liquidating trust in AP14, then it would have to dismiss AP18 because they could not get a benefit from or a percentage of illegal transactions. So in the big picture, this didn't matter to Mr. Blixa. It had nothing to do with him because the B shareholder settled the claim with the liquidating trust and they agreed upon $22 million. Fine. Whatever that claim was, that claim was. But Mr. Blixa objected to it in settlement. The liquidating trust testified that no, this $22 million allowed claim was not to liquidate the claim in AP14 against Mr. Blixa. It was a claim allowed by the liquidating trust, and the liquidating trust was going to take over pursuing Mr. Blixa in AP18, betting that they were going to get more than $22 million. Fine. It's approved. It's not appealed. Mr. Blixa has no gripe about that. Mr. Blixa's only gripe came about when the bankruptcy court in AP14 found that not only was it a distribution and a fraudulent transfer, but more importantly, that the damages, the judgment that was going to be entered against Mr. Blixa was the total of the outstanding claims. Well, all of this is disputed. Right now the question is can you bring – my understanding is that everything you're saying is disputed, and we'll hear that. But leaving that aside, what makes you able to bring this now? Well, there's two things. Under 502D, which is the barring without discretion a percentage of a fraudulent transfer, there's no time limit. I don't think – I think the court was just – the bankruptcy court was just plainly wrong. As to 502J, which is – It relied on a rule. Was it 9024? Well, the problem here is that 502J – and this Court has not actually given – spoken on this issue directly. 502J is the – is that the Court may reconsider a claim at any time. There's no temporal limitation. I mean, it says at any time? I believe the language of the statute says just the court may consider – reconsider a claim. And then – When you add words like at any time, you are really not telling me what the statute says. You're saying you want us to say at any time. Your Honor – The fact is the statute has no timing requirement. And then you have a rule that does impose a timing requirement, and what you, I think, need to argue in order to win is the rule is invalid. Well, I wouldn't argue that. I think that's what you need to do. If you don't argue the rule is invalid, tell me why this isn't covered by the rule. I will, Your Honor. And that's why – So you either say it's not covered by the rule or the rule is invalid. See – Which road do you want to walk down? I think – I don't want to argue that the rule is invalid. I'm sorry? I don't – I'm not arguing that the rule is invalid. Okay. So tell me why the rule doesn't apply. Sure. Because 502J contains no time limit. But in the – in the – So what? But the rule, rule 3008, I believe it is, yes, rule 3008 says that in the advisory notes to 502J, the notes say, reconsideration of orders allowing and disallowing claims is governed by rule 3008. I'm sorry. The rules for – I misspoke. The rules for Federal Bankruptcy Rules 9024 Adversary Committee notes say, reconsideration of orders allowing and disallowing claims is governed by rule 3008, which simply says that it can be brought at any time prior to the case closing. I didn't say that. In the – in rule 3008. A party in interest may move for reconsideration of an order allowing and disallowing a claim against the estate. Correct. The court after hearing a notice shall enter an appropriate order. And if you take a look at the advisory committee notes right below, it explains that at any time – Once again, you know, you say a rule says something. The rule doesn't say that. I mean, you can interpret it that way. You can cite the advisory committee notes. But it is wrong for you to stand there and tell us that the rule says something when the rule doesn't, in fact, say it. Your Honor, I apologize because my notes, when I copied this in, it was – it looked like the exact quote from the statute. It just means that you copied things in a misleading way. And I have to now wonder whether your brief is the same way. Your Honor, it was – it was – my notes show from the quote from In Re Resources Reclamation Corp of America, which is a Ninth Circuit BAP case, and it cites that specific rule with 502J. But what all of this says is that reconsideration is allowed until the closing of the case. It doesn't say that it's going to happen. Correct, Your Honor. There's still discretion. There's still discretion under 502J. There is no discretion over 502D. It doesn't say anything about timing. Correct. It said it's possible. It doesn't say within what – how much time you have to bring. That's governed by 9024. Well, in 902 – Again, you have to either say 9024 is not applicable or it's invalid. I don't think 9024 is applicable to this. Well, it specifically exempts 9024. Have you got 9024 in front of you? Not some –  You don't? Unless it's in the statute. Well, opposing counsels wanted to give you a copy there. Thank you. But, yes, it is, in fact, in those books that sit on the bench, on your counsel table. Yeah, 9024. Yes, Your Honor. Let's read it together. Okay. Basically, it applies except in three circumstances, none of which this is. I mean, it says rule 60 of FRCP – 60 FRCP applies in cases under the code except in these three things, which none of this is, as the President says. I mean, it specifically – Excludes – It excepts the one-year limitation. One-year limitation, so it's quite clear that it – Rule 60C. I just don't see how you get around the language of 9024. Well, even if 902 – I would point the court to In re Resources Reclamation Corp of America, which is 34 Bankruptcy Reporter 771. It's a DAP opinion. And that addresses this issue, something that hasn't been addressed by this court in the Ninth – by the Ninth Circuit. And that discusses the issue, the interplay between Rule 3008 and 502J. And the problem – but even if – even if one were to – I'm sorry. You want me to sort of read it for discussion of the interplay? What kind of argument is that? Well – What does it say that helps you? Well – How does it advance your case? What will I find there that supports your argument? I'm not going to read cases for – That Rule 3008 applies to the timeliness issue under 502J. And rather than 9024? That's my – Is that what it says? My belief is – Is that what it says? My belief is that it says that the – governed by Rule 3008 requiring it be made any time prior to – I'm sorry. What's the case again? In re Resources Reclamation Corp of America. Okay, I have – 34 Bankruptcy Reporter 771. Can we look at that together? I have that. Where does it say that? Do you have it? Your Honor, I don't have it with me. I'm sorry. Not today. I mean, if we – No, I mean, it's in our brief, and we argue that. We discuss this issue specifically. Well, I have it here. You want me to look at something? Tell me where to look. Well, I think if you start with the headnotes, you probably – I don't read the headnotes. We'll probably need to start. I'm sorry? I think that would be – the headnotes would probably be the place. I don't read the headnotes. I'm sorry. You've got to tell me actual text of opinion. Your Honor, if – because I don't have it in front of me, I'm at a disadvantage, and I asked – Don't be at a disadvantage. There's my copy. Is that approached? Yeah, yeah, absolutely. Just tell me what it says, and then there's a new issue. On page 773, which is also highlighted, the case says, the only time limitation on a motion for reconsideration of an order allowing or disallowing a claim is that the motion must be made before the case is closed. Well, that's true. That's when the motion must be made. And that is – and I think that supports the issue that we're talking about today, because in this case, the only time that Mr. Blixeth had any reason to oppose the allowance of that claim was after Judge Kirscher made him liable for the $22 million claim that had been previously allowed by the settlement. And so, Your Honor, if that's – even if you take a look at 9024 and apply 9024, which I don't want the court to do, but even if the court did, I don't understand – I don't see how it is not an abuse of discretion, even under 9024, to say, I allowed this claim. I've now found it's a fraudulent – it's a percentage of a fraudulent transfer. The – I've now imposed that obligation to pay the claim on Mr. Blixeth, and doesn't that – My understanding – let's start again. Sure. I mean, we're going to hear this from your opposing counsel, but my understanding is that that claim was a claim in their position as creditors of the estate on other grounds, not on the grounds of their being class 4 creditors, not on the grounds of their being equity distributees of the estate. And that's exactly what Judge Kershaw said, and that's why your whole argument is based on an erroneous premise. Now, what's – are you going to tell me why that's wrong? Or at least tell me that that's the – that you're making contention, which is contrary to what Judge Kershaw said this claim was. Well, the claim – the only claim that was litigated in terms of the settlement with the – between the B shareholders and the liquidating trust was to award them a $22 million claim in exchange for the liquidating trust taking over the AP-18 litigation from the B shareholders and asserting the B shareholders' claim against Mr. Blixeth. So, I mean, that was their claim. Their claim was based on AP-18. And then when Mr. Blixeth opposed that settlement, he said – Mr. Kershner, the trustee of the liquidating trust at the time, testified in cross-examination that the $22 million was simply – was not intended to liquidate the value of the claim that was being made against Mr. Blixeth in AP-18. And at that point, Mr. Blixeth said, okay, fine, that's it. And it wasn't until Judge Kershaw fashioned the – And it still wasn't. I mean, that $22 million still wasn't that. It was a different claim. Well, it was a – it was a – it was a claim against – it was an award claim against – an allowed claim against the state. Not just for the – just your duties as equity shareholders. Well, the claim was – the basis of their claim was this entitlement to the distribution to Mr. Blixeth. Well, maybe I'm confused. Let me – I just – I have a few questions. Sure. So under 502J, it says, as I read it, a claim that has been allowed or disallowed may be reconsidered for cause. Yes. Doesn't – you know, it has the for cause clause in there, right? Yes, Your Honor. Let's assume you've got a claim and you're moving for reconsideration. The case is not closed yet. As Judge Kaczynski said, if you look at the rules, you have to read the rules with the statute. And as I understand the rules, they – for purposes of defining cause and how you should look at what's cause, you look to the standards under Rule 60B. Certainly other districts and lower courts have looked at it that way. What's wrong with that? And – and – That makes perfect sense. You know, Your Honor, I don't think there's anything specifically wrong with looking at cause under that context. However, that – Rule 60B has been used in this particular case to prevent reconsideration of the claim. And I think that the court – whether you apply Rule 60B or not, I think the court abused its discretion in holding that ruling that this distribution – this, A, was a distribution to Mr. Blitzeff and was a fraudulent transfer, and then making Mr. Blitzeff responsible for paying these shareholders that claim. I think that, under any set of circumstances, needs to constantly get paused. Well, it's one thing to say – it's one thing to argue that taking a look at Rule 60B, did the district court judge abuse his – the bankruptcy judge abuse his discretion in the way he applied the standards under Rule 60B? And I guess that's what you're saying, is that once he made the ruling in AP 14, he should have looked at that as a significant event and exercised his discretion favorably to reconsider the claim. We definitely make that claim in our briefing, yes. That's your argument. But he doesn't have to – as I understand it, it's purely discretion – it's a discretionary matter looking at the standards under Rule 60B. Your Honor, it's discretionary. As to whether or not to grant reconsideration. If he grants reconsideration, takes another look at it, then you might have a good claim. Judge Pius, you're absolutely correct. It is discretionary under 502J. And we don't claim – I don't – there's been no argument from our side, as far as I understand, that that is not – that 502J reconsideration is not discretionary. So you are correct in saying, well, you're arguing, is there sufficient cause? Or did the bankruptcy court's failure to find cause, was that an abuse of discretion? Correct. That is definitely the argument we – one of the arguments we are making. The second argument is an even simpler one, which is a nondiscretionary provision in the statute of 502D, which precludes the getting entitlement to a fraudulent transfer, which does not have discretion. And so the other part of the – the other shoe falling in our appeal is, once Judge Kirschner determined that the 22 – that this distribution was a fraudulent transfer, that then mandated that they reconsider and disallow the $22 million claim to the B shareholders. So I go – I go ahead of you. Now, when Judge Kirschner approved the settlement of the $22 million, the claim, or allowed the claim, was that an appealable order at that time? Yes, it was, Your Honor. No appeal was taken? Not from our side, no. I mean, we had no – we had no skin in that game, Your Honor. I mean, once – once we got the testimony from the liquidating trust that was – that this $22 million settlement was not intended to liquidate the claim that was being made in AP18, whether that claim was – whether that allowed claim was $22 million or $100 million had no – no bearing on Mr. Blixeth at all. And the only time it had any bearing on Mr. Blixeth was when Judge Kirschner fashioned the judgment imposing upon Mr. Blixeth the obligation to pay each of the claimants in the bankruptcy case. And $22 million of $40 is to the B shareholders for this claim. So at the time of the approval of the settlement, there was no reason for us to – I don't even think we'd have standing to oppose that. And that's – and so I'm sorry if I led us – we led astray on – I'm trying to understand your 502D argument. 502D doesn't deal with reconsideration, right? 502D does not deal with reconsideration. Correct, Your Honor. Okay. It just says court must disallow. Correct. So you still have to get in through 502J. I think that's correct, Your Honor, but – under 502D it must disallow certain kinds of orders. So what you have to show is that it was an abuse of discretion under 502J as further channeled by the standards of 16B for the court not to go back and reconsider. I think that's accurate, Your Honor. I'm not sure – I think that no matter how you slice that issue, whether you look at 502D as standing separate and apart from 502J or whether you see it as working together in tandem, I think either way the court had to reconsider this claim and address that. That's the problem. It's not a discussion area, is it, in your view, if the court had to? I guess the question, Your Honor, is if one part of the statute says the court shall disallow a claim that's part of a fraudulent transfer and at the time the claim is made it's not a fraudulent transfer and then subsequent events – So the order is not wrong when done, even according to your lights, that stuff happens later and the statute says there are certain standards of reconsideration and it doesn't mean that all orders that are now implicated by the further development of the record have become void. You have to go through and meet the standards of reconsideration. I don't see how you avoid the discretionary authority in 502J. You say, oh no, he's got to do it. He doesn't have to do it. The reconsideration is clearly discretionary. Well, Your Honor, I agree – I mean, you can argue it's an abuse of discretion. You can argue that, but you can't argue that it's required. Well, Your Honor, that's why I say that whether they work separately or in tandem, I think either way you get to the same end result because if – And how long was it after the – your client acquired saying that he went ahead and brought a motion for reconsideration? Well – According to your lights. Well, the AP14, the judgment was entered on September 7th. It was appealed on September 27th of 2010 to the district court. The district court ultimately dismissed the appeal on November 11th, 2011, so almost a year later, a little over a year later. So when did the bankruptcy court enter its order? Which order? The order on the reconsideration or the order allowing the $22 million claim? The order allowing the $22 million claim. That would have been in April of 2010. Okay. And when did your client bring the motion for reconsideration? One month after the district court dismissed the AP14 appeal for lack of finality, so it would have been November of 2011. And as of – So this is over a year later? Correct. It was pending on appeal. It was pending on the district court. Why wasn't the time – if your position is things change once the bankruptcy court entered that order, why wasn't that the triggering event for your client to say bring a motion for reconsideration? Why doesn't the timeliness of it then get considered from that date? The answer to that is fortunately, at least I see, very simple. The answer is the district court had appellate jurisdiction, and the bankruptcy court no longer had jurisdiction over the contents of the order. And since the $22 million claim allowance as part of the judgment was on appeal to the district court, the bankruptcy court lacked jurisdiction to then modify that judgment, which was on appeal. So as soon as the district court dismissed the appeal for lack of finality, within one month after that we filed our motion for reconsideration on the allowance of the $22 million claim. And the final judgment, the final appealable judgment in AP14, was not entered until sometime in the end of March, as I recall, of 2012. And that's when we had – and the hearing was in March of 2012, based on our motion that was filed in November of 2011. Okay, we'll hear from the other side. Thank you, Your Honor. Good afternoon. May it please the Court, Your Honor. My name is Amy Swedberg, and I'm from the Maslin, Edelman, Borman & Brand Law Firm in Minneapolis. And I am representing the Class B ad hoc group of former equity owners and the debtors. And I'll also be arguing for the joint appellees, the YCLT or the Yellowstone Club Liquidating Trust. Your Honors, this should be a very easy case for this Court. This appeal does rise from the Bankruptcy Court's determination that Blix have failed to meet the Rule 60b-6 Extraordinary Circumstances Requirement for reconsideration of a contested order that was entered more than 18 months previously. And, Your Honor – Did he challenge it the first time? In Bankruptcy Court, but didn't appeal it. Is that what happened? That's correct, Your Honor. And it was actually a fully contested and litigated proceeding in the fact that there was an objection filed. He appeared at the hearing. He cross-examined the trustee. It was a fully contested proceeding that happened. And then it was not appealed. I also disagree with the contention that the Bankruptcy Court lost jurisdiction during the time that the AP-14 appeal was pending, because the Bankruptcy Court, this objection to the claim and the settlement was filed in the main bankruptcy case. The adversary proceeding was a separate proceeding. And the Bankruptcy Court always retains that core jurisdiction to determine allowance and disallowance of claims against the estate. The fact that one adversary proceeding may have been on appeal does not mean that the Court lost jurisdiction for him to seek reconsideration of that order. Really briefly, Your Honor, the order that was entered approving this comprehensive settlement was an agreement between the trust and the Bs that had two primary components. The Bs were allowed an unsecured claim against the debtors that was liquidated at $22 million, and liquidated and compromised, really, at $22 million. And, Your Honor, Judge Berzahn is correct that there is a definite dispute between these arguments that have been raised under 502D with respect to stating that the Bs' claim was really the same as their damages assertion in AP-18. That's not true at all. And, in fact, what was submitted with the supplemental excerpts of record was copies of each of the proofs of claims that the Bs filed against the estate. What were they for? The claims, well, for one thing, the Bs sort of had like a contractual privity with the estate different than what they had with Blixit. And so there was a breach of contract claim, a breach of a subscription agreement that they entered into at the time they purchased their equity interest. There was also a claim for a refund of certain deposits, and there was also a claim for diminution and impairment of their real estate rights. And it's those claims that they had against the debtors that formed the basis of their allowed $22 million claim, not the separate claims that were filed in AP-18. You know, just as an example to see. For equity distributions because of the Credit Suisse. Correct, correct. Distribution. Correct, Your Honor. And just to kind of see where the Blixit goes wrong in equating those two, there are several points in his brief where he talks about how the Bs' $22 million claim, one example is just even page one of the opening brief. He says the Bs' $22 million claim arose from a settlement of their claim against the debtors in AP-18. Well, if you just look at the complaint in AP-18, which is included with the excerpts of the record from pages 86 to 112, there was no claims asserted against the debtors in AP-18. There were only claims against Blixit and other insiders. Has AP-18 ever been settled? AP-18 remains pending. In fact. Never been settled? Correct, correct. It's never been settled. The understanding as I understand it is that it will go away if AP-14 is affirmed. Possibly, Your Honor, and that's one of the arguments that Blixit has with respect to these 502D arguments. That may be a defense in AP-18, but it's not a basis to dispute the Bs' claim against the estate, which is completely separate and based on. I don't know why any of that is relevant right now in terms of the timing issue as to his contention that he had cause because something happened that changed everything. It's relevant because that's the basis for his argument. Well, I know that. But, I mean, since what we're dealing with is an appeal of a determination that his whole motion for reconsideration was too late and not on the merits, it's only relevant to the current ruling on the ground that he is relying on it for cause. Correct, Your Honor. It really actually goes to the extraordinary circumstances under Rule 60B-6, which really gets to the timeliness issue. Because, you know, Judge Haddon noted that Judge Kershaw did look at the merits of his argument for purposes of examining whether he had met those extraordinary circumstances. And, you know, really his argument is that he was found liable in AP-14, and whether or not that constitutes extraordinary circumstances. And this is, you know, in listening to the appeals yesterday and this morning, it's just one more example I see where Blixit is really trying to get two bites of the apple. He's trying to challenge something collaterally, trying to attack the AP-14 judgment by belatedly challenging this claim that was allowed for the bees in a settlement that occurred more than four and a half years ago, in which the bees had given up their right to pursue AP-18. They gave over control of that adversary proceeding to the trust. So they detrimentally relied on that settlement and the finality of that settlement. And, Your Honor, when you get down to the appeal, it's really whether Judge Kershaw applied the correct legal standard, which in going through Rule 9024, unless he's going to challenge that rule, I think Your Honors all agree that that rule does apply here. And then if Judge Kershaw applied the correct legal standard, this Court may only reverse if Judge Kershaw's decision was illogical, implausible, or without support in the record. And I think there's ample support for what Judge Kershaw did here. Well, that would be true whether we go through 9024 or just 502J, which grants discretion because the language you quoted is from our general standards for abuse of discretion. It's not limited to 60B or anything else, right? That's absolutely correct, Your Honor. And because The only thing that 9024 gives you is possible timing, additional timing defenses. That's absolutely correct, Your Honor. And 502 Substance standard is the same. And because this Court couldn't affirm on any grounds the 502J basis for his discretion in considering whether or not to consider this belated challenge or What about this argument? It says, look, the opposing counsel makes and says, situation changed. You know, the situation changed. It now became a situation that wasn't covered by 502D before, and then it became covered by 502D. So at this point, it's an abuse of discretion for the judge not to go back and reconsider. Your Honor, there's He has an order that now, in light of subsequent events, has become arguably illegal. It's a good point, Your Honor, but there's two problems with that argument. And the first problem is that this isn't a 502D situation because it wasn't a portion of a fraudulent transfer that they were seeking by their claim. They had breached a contract, other separate claims than what were raised in AP18. And, Your Honor, the second reason is that all of the rights to challenge the AP14 judgment are in AP14, so he still has those appeal rights. And what about at the time of the original challenge, what was the basis for the original challenge? There were actually about five or six different challenges raised. And one of them wasn't the same one? Well, the whole reason he challenged, you know, the reason why Blix had cared about what these allowed claim against the estate is he knew that there was these two proceedings pending in which he was a litigation target. So there was several grounds raised for why they objected to the settlement, but the point was that he had... But AP14 was already pending, and it already... Correct. And the issue in AP14 was whether this was a distribution or a loan. That's an issue. Well, they claimed it was a fraudulent transfer in AP14. Right. In AP18, they claim it's a distribution. I understand that, but what I'm saying is the notion that AP14, the determination in AP14 didn't come out of the blue. I mean, it was being litigated at the time. Is that right? That's correct. And the issue in it was, was this a fraudulent distribution or was it a loan? Correct, Your Honor. So that was already on the table, although there was no determination as to it. That's correct, Your Honor. You know, it's important to kind of keep in mind here that this really wasn't an order that set the amount of damages. It was an equitable reduction of proven damages. In AP14, Judge Kirchner found that Blixith had absconded with over $280 million from the estate. And in looking at the imperilecto defense and credits of Suiza's conduct, he equitably reduced those damages to consider what some of the claims were against the state. So it's the situation, you know, for him to equate this with AP18, when it's not that Blixith was ordered to pay the B's, their allowed claim amount, he's ordered to pay the trust. He should have been ordered to pay the trust possibly over $280 million because those were the proven damages. And the $22 million was just a measure of what was left after you took out the credit Suiza money. The court, as I understand it, looked at what creditors were in the estate. The claims that were other than credit Suiza. Correct. That were kind of the innocent victims of the misconduct. Thank you. Thank you. Your Honor, there's a difference, obviously, in the opinion on this, and I think the proof is in the putting on the proof of claims. I think I just heard counsel say that the B's gave up their right to go after Mr. Blixith in AP18 for breach of contract. It's all based on this credit Suiza money that Judge Kercher found was a distribution, not a loan, and therefore, and in addition to that, found that it was fraudulent transfer. I think that's really the core of the issue. And how you slice that is just, it's just, I think it's just splitting hairs here because there's still the bottom line is that Mr. Blixith, had Judge Kercher not chosen that result in AP14, had he not said that, that my measure of damage is going to be Mr. Blixith pays everything. Well, what's the penalty in the appeal? I mean, the appeal in other cases now. It would be, Your Honor. Here. It is one of the issues on appeal. There's a briefing order. Why isn't that the place to, that would be our bargain, you know, on all of these things. Well, and I'll have a solution for you in the next argument. But the issue of whether it was proper to include that B shareholder claim is definitely raised in the appeal that's wending its way to your court. And, you know, I don't know when the briefing schedule is, but it is definitely raised. Whatever else you say, why isn't that a reason not to find an abuse of discretion by saying, well, you know, it's not like failing to reconsider will deprive your client of an opportunity to have a case reviewed. The case will be reviewed. So it's not like the judge in this case has to change his ruling because the ruling, if it is wrong, as you argue, will be reviewed. So the judge says, I don't need to go back and reconsider it because if I'm wrong, I will be set straight in another case. Why isn't that the beginning and the end? Two different issues, Your Honor. The issue in AP14 will be what is the, was it proper to include the B shareholder's claim in the measure of damages in AP14. That's one issue. That's an issue in AP14. However, in this case, there shouldn't be any claim at all. And if there's no claim, if there's no allowed claim of $22 million from this appeal, then there's not going to be a $22 million claim to be added in in the AP14 appeal. On the other hand, the converse is not necessarily true because, Your Honor, could rule, I think the measure of damages was okay and not in clearly erroneous or whatever the standard of abuse of discretion would be, but still would not give us the remedy that we would otherwise be entitled to litigating here. Thank you. Thank you very much, Your Honor. We'll take a short break, only about five minutes before the next two cases. And those two cases should be argued together. They're sort of flip sides of the same coin. I got my sort of similar names mixed up, but it's the next two cases I was thinking of. Okay, thank you.
judges: KOZINSKI, PAEZ, BERZON